IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JERRY ANTHONY CADET,<br><br>        *Plaintiff*,<br><br>   v.<br><br>THE OWNERS OR BERKS COUNTY JAIL, *et al.*<br><br>        *Defendants*. | CIVIL ACTION<br>NO. 16-03806 |

**PAPPERT, J.**                                                                                                   February 16, 2017

**MEMORANDUM**

      Plaintiff Jerry Cadet, a *pro se* inmate at Berks County Jail, sued Warden Janine Quigley, Sergeant Vimbilliard, Correctional Officer Landis, Christian Leinbach, Kevin Barnhardt, Mark Scott and Sandy Graffius, claiming that he was subject to unconstitutional conditions of confinement during a 10-day stay in the disciplinary unit. Though he does not specify the authority pursuant to which he brings his claim, such allegations are analyzed under the Eighth and Fourteenth Amendments.[1]  Defendants filed a motion to dismiss, which the Court grants.

**I.**

      Cadet alleges that he was written up and sentenced to ten days in the jail's disciplinary unit for using his cellmate's free phone call. (Pl.'s Compl., at 3, ECF No. 3.)  While housed in

---

[1] Cadet contends that because he is a pre-trial detainee, the Fourteenth Amendment applies. *See* (Pl.'s Compl., at 9). Defendants, however, contend that because Cadet's arrest constituted a parole violation on an earlier conviction, the Eighth Amendment applies. The Third Circuit has acknowledged that "case law has not definitively addressed whether a prisoner awaiting a hearing on a detainer falls under the protection of the Eighth or Fourteenth Amendments." *Gannaway v. Berks Cty. Prison*, 439 F. App'x 86, 89 n.2 (3d Cir. 2011) (citing *Palmer v. Marion Cnty.*, 327 F.3d 588, 592–93 (7th Cir. 2003); *Williams v. Mussomelli*, 722 F.2d 1130, 1133 (3d Cir. 1983)). In any event, this does not affect the Court's analysis because even when analyzing conditions of confinement claims brought by pre-trial detainees under the Fourteenth Amendment, courts utilize the jurisprudence developed under the Eighth Amendment. *See Hubbard v. Taylor*, 399 F.3d 150, 165–66 (3d Cir. 2005). Moreover, when faced with an identically-situated plaintiff asserting the same allegations as those asserted by Cadet, the Third Circuit Court of Appeals held that he failed to state a claim under either the Fourteenth or Eighth Amendments. *See Gannaway*, 439 F. App'x at 88–90.

1

the unit, Cadet claims that his mattress was taken away from 6 a.m. to 9 p.m. for seven days and he was fed "punishment meals" "when he initially arrived to the [unit]." His stay in the disciplinary caused him to "go crazy in there" and the absence of a mattress during the day caused him "severe back pain" and allegedly led to his development of hemorrhoids. (*Id.*) He believes that the purported violations of his constitutional rights entitle him to $10,000 for each day spent in the disciplinary unit, another $10,000 for the body aches and hemorrhoids and an additional $10,000 for not being able to access the jail's law library. (*Id.* at 6.)

Cadet filed his complaint on July 20, 2016, asserting claims against Quigley, Vimbilliard, Landis and the owners of Berks County Jail. (ECF No. 3.) On July 20 Cadet wrote a letter to the Clerk of the Court naming Leinbach, Barnhardt, Scott and Graffius as the jail's purported owners.[2] (ECF No. 7.) These individuals were substituted as defendants in the case on July 28. (ECF No. 6.) On September 8 Defendants filed their motion to dismiss. (ECF No. 18.) After receiving copies of the motion, Cadet wrote to the Court on October 12 stating that it was his understanding that his case had been dismissed and requesting to be reimbursed for the filing fee. (ECF No. 19.) On October 21 the Court issued an order clarifying that Cadet's case had not been dismissed and directing Cadet to file a response to the motion to dismiss by November 21. (ECF No. 20.)

To date, Cadet has not filed any type of responsive pleading nor requested an extension of time in which to do so. The Court will nevertheless analyze the motion on the merits. *See Jones v. Unemployment Comp. Bd. of Review*, 381 F. App'x 187, 189 (3d Cir. 2010) (holding that a motion to dismiss under Rule 12(b)(6) should not be granted without an analysis of the merits, notwithstanding local rules regarding unopposed motions, especially where the party is

---

[2] In their motion papers, the Defendants clarify that Leinbach, Barnhardt and Scott are Berks County Commissioners, while Graffius is the County Controller. (ECF No. 18, at 3.)

not represented); *Ray v. Reed*, 240 F. App'x 455, 456 (3d Cir. 2007) (same); *see also Carter v. Harper*, No. 2:14- 01260, 2015 WL 3485726, at *2–3 (W.D. Pa. June 2, 2015) (analyzing *pro se* complaint on the merits despite plaintiff's failure to file a response); *Malcomb v. Beaver Cty. Pa. (Prothonotary)*, No. 2:13-1772, 2014 WL 2195410, at *1 (W.D. Pa. May 27, 2014), *aff'd sub nom. Malcomb v. Beaver Cty. Pa. (Prothonotary)*, 616 F. App'x 44 (3d Cir. 2015) (same).

## II.

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead factual allegations sufficient "to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The "mere possibility of misconduct" is not enough. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The court must construe the complaint in the light most favorable to the plaintiff. *See Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 790 (3d Cir. 2016) (citations omitted). However, a court need not accept as true inferences drawn by the plaintiff that are unsupported by facts. *See Cal. Pub. Emps.' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 143 (3d Cir. 2004).

Because Cadet filed his complaint *pro se*, the Court "must liberally construe his pleadings." *Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d Cir. 2003) (citation omitted). Moreover, in a § 1983 action, the Court must "apply the applicable law, irrespective of whether a *pro se* litigant has mentioned it by name." *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002) (quoting *Holley v. Dep't of Veteran Affairs*, 165 F.3d 244, 247–48 (3d Cir. 1999)); *see also Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996) ("Since this is a § 1983 action, the [*pro se*] plaintiffs are entitled to relief if their complaint sufficiently alleges deprivation of any right secured by the Constitution." (quoting *Higgins*, 293 F.3d at 688)).

### III.

As an initial matter, Defendants Leinbach, Barnhardt, Scott and Graffius must be dismissed due to a lack of personal involvement with Cadet's claim. "In order for § 1983 liability to be appropriate, '[a] defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of *respondeat superior*.'" *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)). The plaintiff must allege personal involvement, which "can be shown through allegations of personal direction or of actual knowledge and acquiescence," and must be pled with particularity. *Id.* Cadet's complaint does not contain any allegations regarding these Defendants or their involvement with his claim. He does not claim that any of them were aware of the disciplinary action taken against him or the alleged conditions in the disciplinary unit. Moreover, there is no indication that these Defendants—who Cadet believes own the jail—work there or have any contact with individual inmates or corrections officers. Thus, the claims against them will be dismissed based on a lack of sufficient personal involvement in any alleged wrongdoing.

### IV.

Cadet has not alleged sufficient personal involvement with respect to Quigley either. He merely alleges that Quigley denied his appeal of the sentence, which is insufficient involvement to support § 1983 liability. *See Gannaway v. Prime Care Medical, Inc.*, 150 F. Supp. 3d 511, 526 (E.D. Pa. 2015) ("denial of a grievance does not rise to the level of personal involvement required for § 1983 liability"). Even if he had, however, his claim would fail because the conditions of which he complains are not unconstitutional.

Although "the Constitution 'does not mandate comfortable prisons,' . . . neither does it permit inhumane ones," *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981)), and "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment," *id.* (quoting *Helling v. McKinney*, 509 U.S. 25, 31 (1993)). At minimum, "prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Id.* (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)). The Eighth Amendment also "prohibits punishments which, although not physically barbarous, 'involve the unnecessary and wanton infliction of pain." *Rhodes*, 452 U.S. at 346 (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). "Among 'unnecessary and wanton' inflictions of pain are those that are 'totally without penological justification.'" *Id.* (citing *Gregg*, 428 U.S. at 183; *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)).

Not all harms violate the Eighth Amendment, however. *See Farmer*, 511 U.S. at 834. "[A] prison official violates the Eighth Amendment only when two requirements are met. First, the deprivation alleged must be, objectively, sufficiently serious, . . . [it] must result in the denial of the minimal civilized measure of life's necessities." *Id.* (internal citations omitted). Proving that one has been deprived of the minimal civilized measures of life's necessities requires proof that one has been denied "basic human needs, such as food, clothing, shelter, sanitation, medical care and personal safety." *Griffin v. Vaughn*, 112 F.3d 703, 709 (3d Cir. 1997).

Second, the "prison official must have a 'sufficiently culpable state of mind.'" *Farmer*, 511 U.S. at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). "In prison-condition cases[,] that state of mind is one of 'deliberate indifference' to inmate health or safety." *Id.* "[D]eliberate indifference entails something more than mere negligence . . . it is satisfied by

5

something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* "[A] prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id.* at 847.

Cadet takes issue with two aspects of his disciplinary confinement[3]: the temporary mattress restriction and the serving of punishment meals. Courts have repeatedly found that neither of these conditions deprive inmates of the "minimal civilized measures of life's necessities." *Rhodes*, 452 U.S. at 347. The seven-day denial of a mattress during daytime hours does not rise to the level of a constitutional violation. *See, e.g.*, *Williams v. Campbell,* No. 07–885, 2008 WL 2816089, at *4 (E.D. Pa. July 18, 2008) ("[N]umerous courts in this circuit have concluded that the failure to provide an inmate with a mattress for a limited number of days does not constitute cruel and unusual punishment.") (citing *Schaeffer v. Schamp*, No. 06–1516, 2008 WL 2553474, at *6 (W.D. Pa. June 25, 2008); *Castro v. Chesney,* No. 97–4983, 1998 WL 767467, at *8 (E.D. Pa. Nov.3, 1998); *Collins v. Klotz,* No. 92–3772, 1994 WL 371479, at *5 (E.D. Pa. June 24, 1994)). The removal of a mattress or bedding supplies for short periods of time "is not sufficient to constitute 'wanton and unnecessary infliction of pain.'" *Castro*, 1998 WL 767467, at *8 (quoting *Rhodes,* 452 U.S. at 347). In *Gannaway v. Berks County Prison*, No. 09-4501, 2011 WL 1196905, at *6 (E.D. Pa. Mar. 31, 2011), *aff'd*, 439 F. App'x 86 (3d Cir. 2011), the court considered an inmate's claim of cruel and unusual punishment where his mattress was removed from his cell for sixteen hours during the day. *Id.* at *6. The court held that taking an inmate's mattress away during daytime hours is not cruel and unusual punishment

---

[3] Cadet also states that he did not receive medical treatment while he was in the disciplinary unit. However, nowhere in his complaint does he allege that he communicated with any officers regarding his medical issues or at any time requested medical care.

if the inmate is given a mattress for an adequate number of hours at night to sleep. *Id.* Cadet's claim based on the taking of his mattress during the day therefore fails.

The serving of what Cadet refers to as "punishment meals" likewise does not violate the constitution. Cadet does not allege that he was denied food or nutrition. Though Cadet does not specify what the meals consisted of, many similar claims regarding punishment meals, including one previously brought against Berks County Jail, involve nutra-loaf or food loaf. *See, e.g.*, *Gannaway*, 2011 WL 1196905, at *4–5. To the extent that this is what Cadet was fed, that does not violate the constitution. *See id.* (Holding that "temporary food loaf diet that fully comports with the nutritional and caloric requirements of [an inmate's] specific dietary needs does not constitute an extreme deprivation denying the minimal civilized measure of life's necessities. [The inmate's] distaste for the unappetizing food loaf diet, while understandable, is not, by itself, constitutionally actionable." (quoting *Maldonado v. McFaden*, 1994 LEXIS 16837, at *14 (E.D. Pa. Nov. 23, 1994)); *Hinterlong v. Hill*, No. 05-5514, 2006 WL 2303106, at *5 (E.D. Pa. Aug. 8, 2006) ("the replacement of an inmate's diet with a food loaf that was nutritionally similar or identical to the inmate's regular diet did not violate the Eighth Amendment"); *Collins*, 1994 WL 371479, at *4 (same). In *Gannaway*, the inmate had been on a restricted diet consisting of nutri-loaf three times a day, five days per week. 2011 WL 1196905, at *4. Stressing that the inmate suffered no serious ill effects from the diet and made no allegations that the diet was nutritionally inadequate, the court found that serving nutri-loaf to a prisoner was not cruel and unusual punishment because it did not deprive him of his basic needs. *Id.* at *5. Cadet does not allege that the meals were nutritionally inadequate or caused him ill effects, and his claim based on the serving of such meals necessarily fails.

## V.

Under Federal Rule of Civil Procedure 15(a), "courts may grant . . . amendments 'when justice so requires.'" *Fraser v. Nationwide Mut. Ins. Co.*, 352 F.3d 107, 116 (3d Cir. 2004) (citing Fed. R. Civ. P. 15(a)).  While Rule 15 states that "leave to amend should be 'freely given,' a district court has discretion to deny a request to amend if it is apparent from the record that (1) the moving party has demonstrated undue delay, bad faith or dilatory motives, (2) the amendment would be futile, or (3) the amendment would prejudice the other party." *Id.*; *see also Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  "Futility" means that the amended complaint would fail to state a claim upon which relief could be granted.  *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000) (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)).  The Third Circuit Court of Appeals has left the decision of whether to grant or deny leave to amend within the sound discretion of the district court.  *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 272 (3d Cir. 2001) (citations omitted).  Here, amendment would be futile because the alleged conditions of confinement of which Cadet complains do not violate the constitution.  The motion is therefore granted and Cadet's claim is dismissed with prejudice.

An appropriate order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.